# Exhibit 1

**IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA**

GLOBAL DIGITAL SOLUTIONS, INC.,
a foreign corporation,

        Plaintiff,

                                  CASE NO.:

vs.

                                              2014 CA 000318 XXXX MB

MERRIELLYN KETT MURPHY,

        Defendant.

                                                         AD
_____/

## SUMMONS

### PERSONAL SERVICE ON A NATURAL PERSON

TO DEFENDANT(S):

        Merriellyn Kett Murphy
        3270 N. Lake Shore Drive
        Chicago, IL 60657

### IMPORTANT

    A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint/petition with the Clerk of this Court. You also are required to respond to the discovery served with this Summons within 45 days of the date of service. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of this case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

    If you choose to file a written response yourself, at the same time you file your written response to the Court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

ROBERT D. CRITTON, JR.
CRITTON, LUTTIER & COLEMAN
303 Banyan Boulevard
Suite 400
West Palm Beach, FL 33401
561/842-2820

Global Digital Solutions, Inc.  vs.  Merriellyn Kett Murphy
Case No:


THE STATE OF FLORIDA:

TO EACH SHERIFF OF THE STATE:  YOU ARE COMMANDED to serve this summons and a copy
of the complaint/petition in this action the above-named Defendant.

DATED ON _____, 2014.

**JAN - 9 2014**

SHARON R. BOCK
CLERK OF THE CIRCUIT COURT

(SEAL)

BY:___**Robin Pender**_____
DEPUTY CLERK


SHARON R. BOCK
Clerk & Comptroller
P.O. Box 4667
West Palm Beach, Florida
33402-4667

-2-

Global Digital Solutions, Inc.  vs.  Merriellyn Kett Murphy
Case No:

**NOTICE: ANY PERSON WITH A
DISABILITY REQUIRING REASONABLE
ACCOMODATION SHOULD CALL
561-355-2986 NOT LATER THAN SEVEN
DAYS PRIOR TO THE PROCEEDINGS**

## IMPORTANTE

Usted ha sido demandado legalmente.  Tine 20 Dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada atelefonica no lo protegera.  Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen ostros requisitos legales.  Si lo desea, puede usted consultar a un abogado immediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal usted anviar por correo o entegar una copia de su respuesta a la persona deominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

## IMPORANT

Des poursuites judiciares ont ete enterprises contre vous.  Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal.  Un simple coupe de telephone est insuffisant pour vous proteger. Vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende voutre cause.  Si vous ne deposez pas votre reponse ecrite dans le relai requis,  vouc risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reerence d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de tebphones).

Si vous choisissez de deposer vous-meme une response ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocaþ nomme ci-dessous.

-3-

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

GLOBAL DIGITAL SOLUTIONS, INC.,
a foreign corporation,

                                                              2014 CA 00318      MF

                              Plaintiff,

                                            CASE NO.:

vs.

                                                                COPY
                                                  RECEIVED FOR FILING
MERRIELLYN KETT MURPHY,                                JAN - 9 2014

                              Defendant.                SHARON R. BOCK
                                                       CLERK & COMPTROLLER
_____/                     CIRCUIT CIVIL DIVISION

## COMPLAINT

       Plaintiff, GLOBAL DIGITAL SOLUTIONS, INC. ("GDSI") sues the Defendant

MERRIELLYN KETT MURPHY ("KETT"), and states the following:

### GENERAL ALLEGATIONS
### JURISDICTION AND VENUE

       1.      This is an action for damages in excess of Fifteen Thousand and 00/100

($15,000.00) Dollars, exclusive of interest, attorney's fees and costs.

       2.      GDSI is a New Jersey corporation with its principal place of business in

West Palm Beach, Palm Beach County, Florida.

       3.      Upon information and belief, KETT is a resident of Chicago, Illinois.

       4.      Venue is proper in the Fifteenth Judicial Circuit in that some of the acts

complained of herein occurred through mail, telephone, and in person meetings in Palm

Beach County and impacted the Plaintiff, GDSI in Palm Beach County.

       5.      This Court has jurisdiction over KETT pursuant to Florida Statute 48.193

in that KETT traveled to South Florida to meet with GDSI's officers and directors to

discuss the bridge loans, transactions, and merger agreements described herein.

Global Digital Solutions v. Kett
Page No. 2

## BACKGROUND

6.    GDSI is a corporation which, among other ventures, acquires small arms manufacturers and related companies.

7.    Airtronic USA, Inc. ("Airtronic") is an Illinois corporation with its principal place of business at Elk Grove Village, Illinois.

8.    Airtronic was founded in 1993 and is a manufacturer of small arms pursuant to the Standard Industrial Classification Code. Airtronic assembles weapons in accordance with classified plans and specifications approved by the United States government and distributes these weapons from components manufactured by Airtronic subcontractors to the United States Military, the defense ministries for certain approved foreign allies and occasionally to private federal agency customers. Airtronic's approved weapons include grenade launchers, rocket launchers, assault rifles, and machine guns.

9.    KETT is the CEO, President and Chairman of the Board of Directors of Airtronic.

10.   KETT is and was the sole shareholder of Airtronic at all times material hereto.

## AIRTRONIC'S BANKRUPTCY AND MERGER WITH GDSI

11.   On or about March 13, 2012, five (5) unsecured creditors forced Airtronic into an involuntary Bankruptcy Petition under Chapter 7, Case #12-09776, U.S. Bankruptcy Court, Northern District of Illinois ("Bankruptcy Case").

12.   On or about May 17, 2012, the Bankruptcy Case was converted to a Chapter 11 case by the Bankruptcy Court.

13.    On August 12, 2012, GDSI entered into a Letter of Intent with KETT as the CEO and sole shareholder of Airtronic.  GDSI agreed to provide financial assistance with the understanding that it could and would acquire an equity stake in Airtronic.

14.    On or about October 22, 2012, GDSI and Airtronic entered into a Merger Agreement ("Merger Agreement") wherein GDSI agreed to acquire 70% of Airtronic in exchange for cash, common stock and other consideration.  The parties agreed the Merger Agreement would close within sixty days of the confirmation of Airtronic's Plan of Reorganization pending in the Bankruptcy Case.

15.    Pursuant to the terms of the Merger Agreement, GDSI had the option to acquire the remaining 30% of Airtronic two years after the closing of the merger.  Thus, GDSI would own 100% of Airtronic.

16.    KETT, as the CEO and sole shareholder of Airtronic, knew that GDSI had no interest in merely being a lender, but that GDSI's financial participation was for the purpose of eventually acquiring 100% of Airtronic's stock from KETT.

17.    On June 10, 2013, Airtronic filed its initial Plan of Reorganization with the Bankruptcy Court.

18.    From approximately June through August of 2013, GDSI and its officers and directors and Airtronic, through KETT, negotiated an Amended Reorganization Plan which would work to the benefit of Airtronic to make it a successful business venture on a solid financial basis moving forward.  However, KETT, for her own personal benefit and to the detriment of Airtronic and its creditors, delayed the filing of the Amended Reorganization Plan in order to secure a new personal employment agreement.

Global Digital Solutions v. Kett
Page No. 4

19.     While the parties were negotiating an Amended Reorganization Plan, Airtronic exhausted its working capital despite KETT'S original representations to GDSI that Airtronic would not need more than $700,000.00 in working capital to emerge from bankruptcy.  GDSI would not agree to provide Airtronic any additional funding until documents related to a new loan and an amendment to the Merger Agreement were executed.

20.     On July 11, 2013, KETT made several representations to GDSI that Airtronic needed additional funds to continue operating through the closing date outlined in the Merger Agreement.  Based on KETT's representations to GDSI that GDSI was Airtronic's only merger partner, GDSI agreed to loan Airtronic additional funds so that Airtronic could continue operating through the closing of the Merger Agreement.

21.     On or about August 5, 2013, Airtronic entered into a new Employment Agreement with KETT that met her extensive, arguably onerous and unreasonable, employment demands.

22.     On or about August 21, 2013, Airtronic filed an Amended Plan of Reorganization and Disclosure Statement with the Bankruptcy Court.

23.     On October 2, 2013, following a hearing on the amended plan, the Bankruptcy Court confirmed the Airtronic Amended Plan of Reorganization.  As a result of the confirmation, Airtronic became the "Reorganized Debtor" and was no longer the Debtor In Possession under Chapter 11.

24.     By becoming the Reorganized Debtor, Airtronic was now able to close the Merger Agreement contemplated by the Court confirmed Amended Plan of

Global Digital Solutions v. Kett
Page No. 5

Reorganization filed with Bankruptcy Court and to start its business having resolved all creditor issues.

25.     Pursuant to the Amended Plan of Reorganization, Airtronic was required to close the Merger Agreement within sixty days of the Bankruptcy Court's approval of the plan.  In the event that the closing did not occur within sixty days, Airtronic would revert back to a Debtor in Possession under Chapter 11.

26.     GDSI, in conjunction with its retained principals and professionals, spent significant time, energy and financial resources to bring about a transaction which was favorable not only to GDSI but to Airtronic and KETT as well.

27.     Through approved press releases and notices, GDSI was able to increase its market capitalization by more than $90,000,000.00 by disclosing the proposed merger with Airtronic which had been negotiated between GDSI, Airtronic and Airtronic's creditors and which had been confirmed/approved by the Bankruptcy Court.

## GDSI'S LOANS TO AIRTRONIC

28.     In conjunction with the planned Merger Agreement, GDSI and Airtronic entered into Bridge Loan Agreement wherein GDSI agreed to loan Airtronic up to $750,000.00.  The Bridge Loan agreement consisted of a secured Promissory Note, a Debtor in Possession Note Purchase Agreement and a Security Agreement.

29.     On March 15, 2013, GDSI and Airtronic entered into a Bridge Loan Ratification and Modification Agreement which reduced the loan amount to $700,000.00 and ratified the pre-existing loan documents.

Global Digital Solutions v. Kett
Page No. 6

30.     Based on KETT's representations that additional funding was necessary to fund Airtronic through the closing of the Merger Agreement, GDSI loaned Airtronic an additional $550,000.00 on August 5, 2013.

31.     On October 10, 2013, GDSI and Airtronic entered into a Third Bridge Loan Modification and Ratification Agreement as well as a Third Promissory Note for $200,000.00.

## KETT'S REFUSAL TO CLOSE THE MERGER AGREEMENT

32.     Pursuant to the Amended Plan of Reorganization, Airtronic was required to close the Merger Agreement by December 2, 2013 to avoid reverting back to a Debtor in Possession under Chapter 11.

33.     GDSI and Airtronic set November 18, 2013 as the closing date for the execution of the merger.

34.     From GDSI's Letter of Intent forward, KETT led GDSI to believe that she was committed to consummating an agreement with GDSI.   Once KETT's new employment agreement was finalized, she continued to represent to GDSI that she, as the 100% shareholder, was in favor of the Merger Agreement and the Amended Plan of Reorganization.

35.     In anticipation of the upcoming closing date, GDSI spent substantial time, expense and financial resources to prepare for the execution of the Merger Agreement.

36.     Up until November 13, 2013, KETT continued to communicate with GDSI without expressing any intent to cancel the transaction.

Global Digital Solutions v. Kett
Page No. 7

37.    Suddenly and without warning, on November 15, 2013, GDSI received a letter from Airtronic's counsel that the Merger Agreement would not go forward on the scheduled closing date of November 18, 2013, if ever.

38.    On December 2, 2013, Airtronic reverted back to the status of a Debtor In Possession under Chapter 11 due to the fact that the Merger Agreement and Amended Plan of Reorganization had not been consummated within sixty days of its confirmation by the Bankruptcy Court.

39.    On December 3, 2013, KETT, on behalf of Airtronic, sent correspondence to GDSI stating that Airtronic would not go forward with the Merger Agreement.

40.    KETT for her own personal benefit and to the detriment of Airtronic, refused to sign the Merger Agreement documents on behalf of Airtronic.  KETT's refusal to sign the Merger Agreement prevented the Plan of Reorganization from being consummated as agreed upon by Airtronic, GDSI, Airtronic's creditors, and the Bankruptcy Court.

41.    GDSI now knows that KETT had no intention of ever closing this transaction but instead strung GDSI and its principals along in order to obtain substantial financial support exceeding $1,500,000.00 in principle, interest, and fees for Airtronic which directly benefited her in the form of increased salaries and benefits while she searched for another partner and negotiated a separate merger between Airtronic, Kearney Park Investments, LLC ("Kearney") and Onset Capital Partners ("Onset") that would foreclose GDSI's rights to merge with Airtronic.  Discovery may show that KETT conspired with Kearney, Onset, and/or others to tortiously interfere with the GDSI relationship prior to December of 2013.

Global Digital Solutions v. Kett
Page No. 8

## COUNT I – TORTIOUS INTERFERENCE WITH CONTRACT AND/OR WITH PROSPECTIVE ECONOMIC ADVANTAGE

42.     Plaintiff adopts and realleges paragraphs 1 through 41.

43.     GDSI entered into a Merger Agreement with Airtronic that had a closing date of November 18, 2013 and a Court mandated closing date of later than December 2, 2013.

44.     KETT as sole shareholder, CEO, President and Chairman of the Board of Directors of Airtronic, had knowledge of the existence of the Merger Agreement.

45.     At some point, KETT became concerned that the Merger Agreement may impact her personal salary and/or position as CEO with Airtronic.

46.     KETT also became concerned that the Merger Agreement may, in some way, impact her future ability to work in the "defense industry".

47.     KETT for her own personal benefit, to the detriment of Airtronic, refused to close the merger on behalf of Airtronic.  KETT's refusal to close the merger prevented the Plan of Reorganization from being consummated as agreed upon by Airtronic, GDSI, Airtronic's creditors, and the Bankruptcy Court.

48.     At the time KETT refused to sign the merger closing documents on behalf of Airtronic, there were no other reorganization plans approved by Airtronic, GDSI, Airtronic's creditors, and/or the Bankruptcy Court.

49.     Moreover, at the time KETT refused to sign the documents on behalf of Airtronic, Airtronic did not have any other viable sources of funding to repay GDSI's loans.

50.     KETT's acts were solely with ulterior purposes and without an honest belief that her actions would benefit Airtronic. KETT took these actions to increase her

Global Digital Solutions v. Kett
Page No. 9

salary, maintain her presence in the "defense industry", and to seek out other investors with whom she could attempt to strike a more lucrative financial deal for herself.

51.    Shortly after Airtronic sent correspondence to GDSI indicating it was not going forward with the Merger Agreement, Onset and Kearney conveniently entered into a separate agreement to merge with Airtronic that would foreclose GDSI's right to complete the Merger Agreement.  GDSI believes that KETT was wrongfully soliciting and negotiating another merger transaction or investment opportunity for Airtronic with Kearney, Onset, or other financial/investor sources despite telling GDSI she would proceed with the closing.

52.    As a result of KETT's actions, GDSI has been unable to complete the Merger Agreement with Airtronic.

53.    As a result of its inability to complete the merger with Airtronic, GDSI suffered a loss in market capitalization exceeding $90,000,000.00.

WHEREFORE, GDSI demands judgment against KETT in an amount of at least $90,000,000.00, plus interest, costs of this action, and such other and further relief as this Court may deem appropriate.

## COUNT II – FRAUDULENT INDUCEMENT

54.    Plaintiff adopts and realleges paragraphs 1 through 41.

55.    From October 22, 2012 through November 14, 2013,  KETT    as    sole shareholder, CEO, President and Chairman of the Board of Directors of Airtronic, represented to GDSI that she would sign documents on behalf of Airtronic to complete and close the Merger Agreement.

56.     During this time period, KETT also represented that Airtronic needed bridge loans to continue operations up to and through the completion of the Merger Agreement.

57.     Based on KETT's representations, GDSI loaned Airtronic $700,000.00 under an initial bridge loan.

58.     Despite KETT's assurances that the initial bridge loan was sufficient to fund Airtronic through the Merger Agreement, KETT requested GDSI continue to fund Airtronic after she exhausted the amount of the initial bridge loan.

59.     KETT represented to GDSI that additional funding from GDSI was necessary to avoid the Airtronic's bankruptcy being converted back to a Chapter 7 and to continue operations of the company.

60.     Based on KETT's representations, on August 15, 2013, GDSI issued Airtronic a second bridge loan in the amount of $550,000.00.

61.     Based on KETT's representations, GDSI issued approved press releases and notices outlining the merger with Airtronic that resulted in GSDI receiving a significant gain in market capitalization.

62.     Finally, based on KETT's further representations that the Merger Agreement would go forward, on October 10, 2013, GDSI agreed to loan Airtronic up to $200,000.00 under a third bridge loan.

63.     Five weeks after GDSI entered into the third bridge loan with Airtronic, and had advanced $156,173.58 thereunder, GDSI, without warning, received a letter from Airtronic's counsel stating that the Merger Agreement would not go forward on the scheduled closing date of November 18, 2013, if ever.

Global Digital Solutions v. Kett
Page No. 11

64.    KETT's made material misrepresentations by stating that she would sign the closing documents on behalf of Airtronic to complete the Merger Agreement.

65.    At the time KETT secured the second and third bridge loans, she had no intention of ever closing this transaction but continued to string GDSI along so that she could obtain funding for her salary while searching for a different investor for Airtronic.

66.    GDSI relied on KETT's misrepresentations in issuing bridge loans to Airtronic and keeping its stockholder informed as to the prospects of Airtronic and the closing of the merger.

67.    When KETT refused to close on November 18, 2013, Airtronic had no other investors and/or lenders and KETT knew there was no other means to repay the amount of the bridge loans.

68.    GDSI was damaged by spending resources preparing for the Merger Agreement and loaning $1,406,173.58 to Airtronic based on KETT's misrepresentations that the Merger Agreement would go forward when, in reality, KETT knew the Merger Agreement would not go forward and there was no way to repay the amount of the loans.

69.    GDSI was further damaged by the loss of market capitalization that occurred when the Merger Transaction did not go forward in accordance with the approved Plan of Reorganization.

WHEREFORE, GDSI demands judgment against KETT plus interest, costs of this action, and such other and further relief as this Court may deem appropriate.

## **COUNT III – NEGLIGENT MISREPRESENTATION**

70.    Plaintiff adopts and realleges paragraphs 1 through 41.

Global Digital Solutions v. Kett
Page No. 12

71.     KETT as sole shareholder, CEO, President and Chairman of the Board of Directors of Airtronic, represented to GDSI that she would sign documents on behalf of Airtronic to complete the Merger Agreement.

72.     Based on KETT's representations, GDSI issued Airtronic an initial bridge loan in the amount of $700,000.00.

73.     On July 11, 2013, KETT made several representations to GDSI that additional funds were necessary to continue operations of Airtronic.  Specifically, KETT represented that additional funds were necessary to pay:

    a.  vendors;

    b.  rent;

    c.  employee's salaries;

    d.  bank fees; and

    e.  legal fees.

74.     KETT represented that the additional funding was necessary in order to continue the operation of the company so that the Merger Agreement could be completed.

75.     Based on KETT's representations, GDSI agreed to loan to Airtronic up to an additional $750,000.00 pursuant to two additional bridge loans.

76.     GDSI also issued approved press releases and notices keeping its stockholders informed as to the prospects of Airtronic and the closing of the merger that resulted in GSDI receiving a significant increase in market capitalization.

Global Digital Solutions v. Kett
Page No. 13

77.    KETT was negligent in making these representations because at the time she made the representations, she knew or should have known that Airtronic was not going to go forward with the Merger Agreement.

78.    KETT intentionally made the representations so that GDSI would continue to fund Airtronic and her personal salary while she looked elsewhere for new investors and lenders for Airtronic.

79.    Based on KETT's misrepresentations, GDSI suffered a loss in market capitalization exceeding $90,000,000.00.

80.    GDSI was also damaged by loaning $1,406,173.58 to Airtronic based on KETT's misrepresentations that the Merger Agreement would go forward when, in reality, KETT knew the Merger agreement would not go forward and there was no way to repay the amount of the loans.

WHEREFORE, GDSI demands judgment against KETT plus interest, costs of this action, and such other and further relief as this Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, hereby requests a trial by jury on all issues so triable.

Dated this 9th of January, 2014.

**CRITTON, LUTTIER & COLEMAN LLP**
303 Banyan Blvd
Suite 400
West Palm Beach, FL 33401
Telephone: 561-842-2820
Facsimile: 561-253-0164

By: _____
ROBERT D. CRITTON, JR.
Florida Bar No. 224162
J. CHRIS BRISTOW
Florida Bar No. 068304
*Attorneys for the Plaintiff*

Global Digital Solutions v. Kett
Page No. 14

Primary email:    rcrit@bclclaw.com
Secondary email:  jcbristow@bclclaw.com
                  czaguirre@bclclaw.com