UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:14-cv-80190-DTKH

GLOBAL DIGITAL SOLUTIONS, INC.,
a foreign corporation,

       Plaintiff,

vs.

MERRIELLYN KETT MURPHY,

       Defendant.
_____/

### PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, Global Digital Solutions, Inc. ("GDSI") respectfully submits the following memorandum of law in opposition to Defendant, Mariellyn Kett's Murphy's Motion to Dismiss.

### SUMMARY OF THE ARGUMENT

This is an action against Defendant only and not her company, Airtronic USA, Inc. ("Airtronic"). This Court has personal jurisdiction over Defendant because: she made trips to Florida to discuss her personal employment and non-disclosure agreements; she made misrepresentations in order to solicit nearly $1.5 million dollars in funds from Florida which were transferred via 39 different wire transfers from a Florida bank account and were used to pay Defendant's salary; she made phone calls and sent emails to GDSI's employees in Florida to facilitate the tortious activity alleged in the Complaint; and she expected, as compensation, to receive stock in GDSI, whose principle place of business is in the Southern District of Florida.

In this action, Defendant was properly served with a state court complaint and has substantial contacts with Florida sufficient to grant a Florida court personal jurisdiction over Defendant. The Southern District of Florida is the only appropriate venue because Plaintiff's principle place of business is in West Palm Beach and has been for nearly a decade. All of Defendant's tortious conduct occurred during in-person meetings in the Southern District of Florida, in telephone calls with individuals in the Southern District of Florida, and/or in written emails or other correspondence with GDSI in the Southern District of Florida. All witnesses that GDSI anticipates calling are located in Florida and most are located within the Southern District. Thus, this Court has jurisdiction over Defendant and the Southern District of Florida is the appropriate venue for this action.

## **FACTS RELAVANT TO THE OPPOSITION OF THE MOTION TO DISMISS**

Defendant is the sole shareholder, CEO, President and Chairman of the Board of Directors of Airtronic. (Pltf.'s Compl. ¶¶ 7–8). After Airtronic filed for bankruptcy, Plaintiff and Airtronic entered into a merger agreement that was set to close on December 2, 2013. (Pltf.'s Compl. ¶ 32). Plaintiff brought an action against Defendant individually for, among other things, interfering with the merger agreement and fraudulently inducing GDSI to loan Airtronic additional money so that Defendant could pay her personal salary and expenses while she searched for a more lucrative investment opportunity for herself and Airtronic. *See* (Pltf.'s Compl.)*.* Defendant was properly served with Plaintiff's state court complaint on January 14, 2014. (DE. 3-1). She was able to hire a Florida attorney prior to the date the response to Plaintiff's Complaint was due. (D.E. 4)

In order to secure funds so that Airtronic could pay her salary, Defendant traveled to Florida on at least two different occasions to meet with Plaintiff's representatives. (Declarations of Loppert and Sullivan attached as **Exhibits "1"** and **"2"** respectively). Two senior officers from GDSI specifically recall meeting with Defendant on at least two occasions in Ft. Lauderdale and West Palm Beach, Florida. *Id.* At least four other GDSI employees met with Defendant in April of 2013. (Declarations of Gray, Kelley, Wang, and Carroll attached as **Exhibits "3", "4", "5" and "6"** respectively). All six employees for GDSI recall that both Defendant's personal employment contract and personal non-disclosure agreement were discussed during the Florida meetings. *See* (**Exhibits "1"** though **"6"**). Following the Florida meetings, GDSI loaned Airtronic $1,406,126.58 disbursed via 39 different wire transfers that all originated in Florida from a Florida bank account. *See* (**Exhibit "1"**). Portions of the wire transfers were used to pay Defendant's personal salary prior to the completion of the merger with GDSI. *Id.*

In addition to the Florida meetings, Defendant made multiple phone calls to GDSI in Florida regarding the allegations in the Complaint and to discuss her personal employment contract. *Id.* Defendant also sent multiple emails from her personal Yahoo email address to GDSI in Florida, including the email from Defendant stating she would not sign documents on behalf of Airtronic until she had an agreement for her personal employment contract, personal stock in GDSI, personal compensation for Defendant's intellectual property, and personal reimbursement for Defendant facilitating the deal between Airtronic and GDSI. *Id.*

**A. DEFENDANT'S TRAVELS TO FLORIDA, EMAILS TO FLORIDA, TELEPHONE COMMUNICATIONS WITH PEOPLE IN FLORIDA AND TORTIOUS CONDUCT IN FLORIDA PROVIDE PERSONAL JURISDICTION OVER DEFENDANT**

Florida's long arm statute provides personal jurisdiction over a non-resident defendant when the defendant's contacts with Florida are extensive enough to be tantamount to the defendant being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in the state's courts in any litigation arising out of any transaction or occurrence taking place anywhere in the world. *Exhibit Icons, LLC v. XP Companies*, 609 F.Supp.2d 1282 (S.D. Fla. 2009). More importantly, "personal jurisdiction may be supported over a non-resident defendant who has no other contacts with the forum." *Id*. at. 1296. Not only did Defendant have substantial, in-person telephonic and written contact with Florida, she also committed an intentional tort in Florida thus subjecting her to jurisdiction in this forum.

    **i.** **Defendant traveled to Florida to induce GDSI into loaning Airtronic funds during the merger and to discuss her personal employment contract and personal non-disclosure agreement**

Florida courts have held that travel to Florida by a non-resident defendant for the negotiation of contract with a party in Florida satisfies the long arm statute. *Baker Electronics, Inc. v. Pentar Systems, Inc.*, 219 F.Supp.2d 1260, 1263 (M.D. Fla. 2002). In *Baker*, the non-resident defendant traveled to Florida to discuss a joint venture, communicated with the plaintiff in Florida about the joint venture, and ultimately obtained one hundred thousand dollars from the plaintiff for purposes of the joint venture. In denying the defendant's jurisdictional motion to dismiss, the court ruled that a dismissal for lack of jurisdiction may result in "out-of-state businesses [finding] comfort

4

in dealing with Florida businesses, including delivering goods to this state, without facing the jurisdiction" *Id.*

Although Defendant's declaration is silent on the issue, Defendant's Motion to Dismiss acknowledges that there were "a handful" of meetings in Florida. (D.E. 6, pg. 9). Defendant traveled to Florida to meet with GDSI and discuss the merger agreement. *See* (**Exhibits "1"** and **"2"**). Not only did Defendant discuss the bridge loans during the Florida meetings, she also discussed her personal employment contract and non-disclosure agreement. *See* (**Exhibits "1"** through **"6"**). As noted above, Defendant refused to sign the merger documents on behalf of Airtronic until her extensive personal demands were met *See* (June 9, 2013 email from Defendant's personal account to GDSI in Florida attached under Ex. A to **Exhibit "1"**). These Florida meetings were critical to Defendant because she needed the money to fund her personal salary through Airtronic while she searched for a more lucrative investor. The Florida meetings were equally critical for GDSI to discuss the terms of the proposed merger. Had the Florida meetings not occurred, GDSI would likely not have loaned Airtronic the nearly $1.5 million in bridge loans. As alleged, the multiple meetings in Florida alone are enough to exercise personal jurisdiction upon Defendant.

    **ii.** **Defendant had substantial telephonic and email communication with GDSI in Florida to confer jurisdiction**

"With so much business conducted today through the internet, value must be placed on electronic dialog and the relationships that ensue as a result." *Pathman v. Grey Flannel Auctions, Inc.*, 741 F.Supp.2d 1318 (S.D. Fla. 2010). In this era of electronic communication, this Court has stated that "sending direct email, purchasing items, and placing bids, all create file exchanges that weigh in favor of exercising

5

jurisdiction" over a non-resident defendant that has no other contact with Florida. *Id.* at 1325—1326. Further, reliance on electronic communications is just as significant as traditional forms of contact, particularly when a relationship is ongoing. *Id.* at 1326.

In addition to the in-person meetings in Florida, Defendant had substantial email and telephonic contact with GDSI in Florida. *See* (**Exhibits "1"** and **"2"**). There are at least 96 emails that include Defendant's personal email account as either the sender or recipient, including the email that outlines Defendant's personal demands alleged in the Complaint. *See* (**Exhibit "1"**). The multiple emails and the phone calls that Defendant made to Plaintiff in Florida provide sufficient basis for personal jurisdiction over Plaintiff in Florida.

> **iii. Defendant solicited nearly 1.5 million dollars from Florida for her own personal benefit.**

Moreover, in determining whether a party was conducting business in Florida, the courts will examine whether a party solicits business in Florida and any amount of revenue obtained as a result. *Pathman*, 741 F. Supp. 2d at 1323. Here, there is no doubt that Defendant, as the sole shareholder for Airtronic, solicited nearly $1.5 million dollars from Florida. While Defendant solicited this money under the guise that it would was for Airtronic, it is now clear that Defendant was soliciting the money for her own personal benefit so that she could continue to pay her personal salary while she looked for more lucrative opportunities for her company.[1] Defendant's action in coming to Florida and soliciting nearly $1.5 million dollars through a series of 39 wire transfers from Florida gives this Court personal jurisdiction over Defendant.

---

[1] Since filing the Complaint, Plaintiff has obtained substantial evidence that will show the Defendant, herself, was in fact looking for other investment opportunities while she continued to string along Plaintiff and take Plaintiff's wire transfers from Florida. *See* (Onset letter attached as Ex. A to D.E. 8)

6

### iv. Defendant committed intentional torts in Florida that caused substantial damages to Plaintiff in Florida

This court has recognized that "[f]or personal jurisdiction to attach under the 'tortious activity' provision of the Florida long-arm statute, the plaintiff must demonstrate that the non-resident defendant 'committed a substantial aspect of the alleged tort in Florida' by establishing that the activities in Florida 'w[ere] essential to the success of the tort.'" *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d at 829, 857 (11th Cir.1990) (*quoting Williams Elec. Co., Inc. v. Honeywell, Inc.*, 854 F.2d 389, 394 (11th Cir.1988)). Committing a tortious act in Florida under Florida's long-arm statute "can occur through the non-resident defendant's telephonic, electronic, or written communications into Florida, as long as the plaintiff's cause of action arises from the communications." *Pathman v. Grey Flannel Auctions, Inc.*, 741 F.Supp.2d 1318 (S.D. Fla. 2010) (*citing Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002)). When an intentional tort (such as fraudulent inducement) is alleged, "personal jurisdiction may be supported over a non-resident defendant who has no other contacts with the forum." *Exhibit Icons, LLC v. XP Companies, LLC.*, 609 F.Supp.2d 128, (S.D. Fla. 2009).

Defendant had substantial communication with Florida in an attempt to induce and/or negligently misrepresent to Plaintiff that Defendant would sign the merger documents after loans were made and Defendant's specific demands were met. As discussed above, Defendant's communication included visiting Florida on a "handful" of occasions to discuss the merger and loans, multiple telephone calls to GDSI in Florida, and multiple emails to Florida from her personal Yahoo email address. Included in the emails from Defendant's personal account was a June 9, 2013 email sent to GDSI in Florida. It stated that Defendant would not sign the merger agreement until GDSI met

7

four demands pertaining to Defendant's compensation for: (1) Defendant's personal employment agreement; (2) Defendant's personal stock (3) Airtronic's intellectual property that Defendant personally owned; and (4) putting the deal between Airtronic and GDSI together. Plaintiff agreed and/or complied with Defendant's requests; however, Defendant still failed to execute the necessary documents to complete the merger. This email alone is sufficient evidence to show Defendant committed an intentional tort in Florida and caused damage to Plaintiff in Florida. Thus, personal jurisdiction over the Defendant is proper in Florida.

B. **DUE PROCESS**

The Supreme Court as well as Florida courts have held that one contact is sufficient to show minimum contacts in the State of Florida. *See Burger King v. Rudzewicz*, 471 U.S. 462, 476 n. 18 (1985); *Ileyac Shipping, Ltd. v. Riera-Gomez*, 899 So. 2d 1230, 1232 (Fla. 3d DCA 2005) (although only a single act, the alleged commission of tortious act by a non-resident ship owner in a Florida port constituted sufficient minimum contacts with Florida to support exercise of personal jurisdiction over ship owner in worker's tort action). Further, one email communication is sufficient to show minimum contacts if that email reaches a Florida resident and is the basis for the allegations in the complaint. *Price v. Kronenberger*, 24 So. 3d 775, 776 (Fla. 5th DCA 2009).

As noted above, Defendant had substantial contacts with Florida that would each subject her to jurisdiction independently. Taken as a whole, the visits to Florida, telephone calls, and emails, show substantial contacts to satisfy due process. Defendant's arguments relating to Airtronic and the bankruptcy action have nothing to

do with the instant case, which is against Defendant individually. Here, Plaintiff is seeking damages for Defendant's tortious conduct that occurred in Florida and benefited Defendant personally. Defendant certainly knew or should have know that she would be subject to suit in Florida when she traveled to Florida, solicited nearly $1.5 million dollars from Florida, and had substantial negotiations with Plaintiff and its employees whose principle place of business is in Florida.

C. **THE SOUTHERN DISTRICT IS THE ONLY APPROPRIATE VENUE**

The Southern District is the only appropriate venue based on each and every factor due to the location of the witnesses, convenience of the parties, ease of access to sources of proof, Plaintiff's choice of venue, and public interest. Again, this is an action against Defendant individually for her tortious conduct that occurred in Florida. All six witnesses who provided declarations in support of Plaintiff's position are in Florida and all but one are in the Southern District. The only known out of state witness is Defendant. All of the pertinent evidence—the wire transfers, notes from the Florida meetings, phone calls, and emails to Florida—is centered in the Southern District. Plaintiff chose the Southern District because it would be burdensome and inconvenient for Plaintiff to have to present its witnesses and evidence in another forum. Moreover, public interest supports keeping this action in Florida because: (1) Florida businesses would be dissuaded from conducting business deals with non-residents for fear that there would be no relief in the Florida courts; (2) it involves a business that has operated its principle place of business out of Florida for more than a decade; and (3) it involves a substantial amount of money, nearly $1.5 million dollars, which originated from Florida.

D. **THIS COURT HAS JURISDICTION OVER PLAINTIFF**

There is no merit to Defendant's arguments and/or suggestions that this Court has no jurisdiction over Plaintiff. Defendant's motion curiously ignores facts readily available through public searches that establish Plaintiff's longstanding connection with the state of Florida.[2] Specifically, Plaintiff has been operating its principle place of business out of West Palm Beach Florida, for nearly a decade and Plaintiff's Florida subsidiary that facilitated the $1.5 million dollar loan between Airtronic and Plaintiff is a Florida limited liability company that was licensed to do business during the time of Plaintiff's tortious conduct.

E. **SERVICE OF PROCESS WAS SUFFICIENT**

Not only did Defendant receive service of this lawsuit, but she was also put on notice to hire a Florida attorney and respond to the Complaint within the time period required by the Florida Rules of Civil Procedure. The Affidavit of Service signed by process server Brent Reid states that Defendant was served on January 14, 2013 at 6:25 p.m. (DE. 3-1). Therefore, Defendant was properly served.

F. **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss and Motion to Transfer in their entirety.

---

[2] An internet search would have located a March 31, 2004 SEC filing showing West Palm Beach, Florida as Plaintiff's principal place of business. *See* http://www.sec.gov/Archives/edgar/data/1011662/000101489704000080/global10qsb1q04.txt

10

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished with the Clerk of the Court using CM/ECF, we also certify that the foregoing document is being served this day to counsel of Steven M. De Falco, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing on this 7th day of March, 2014.

**CRITTON, LUTTIER &    COLEMAN, LLP**
303 Banyan Boulevard, Suite 400
West Palm Beach, FL 33401
(T) 561/842-2820
(F) 561/844-6929


BY:   s/ Robert D. Critton, Jr.
ROBERT D. CRITTON, JR., ESQ.
Florida Bar 224162
J. CHRIS BRISTOW
Florida Bar No. 068304
rcrit@bclclaw.com
chris.bristow@bclclaw.com
***(Attorneys for Plaintiff, GDSI)***