UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-80190-CIV-HURLEY

**GLOBAL DIGITAL SOLUTIONS, INC.,**
    Plaintiff,

vs.

**MERRIELLYN KETT MURPHY,**
    Defendant.
_____/

**ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL
JURISDICTIONAL DISCOVERY [ECF No. 14]
&
ORDER DENYING DEFENDANT's MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION [ECF No. 6]
WITHOUT PREJUDICE TO RENEW AT COMPLETION OF DISCOVERY**

**THIS CAUSE** is before the court upon the motion of defendant Merriellyn Kett Murphy ("Murphy") to dismiss plaintiff's complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) [ECF No. 6]. Plaintiff Global Digital Solutions, Inc. ("Global") opposes the motion, contending that its complaint makes a *prima facie* showing of personal jurisdiction over Murphy. Alternatively, Global requests an opportunity to conduct jurisdictional discovery in order to allow it to meaningfully respond to the defendant's jurisdictional challenge.

In resisting the motion here, Global contends that this court has specific jurisdiction over Murphy under the Florida long-arm statute. It does not cite the specific provisions of the Florida long-arm statute on which it relies to reach Murphy, but appears to be traveling under a specific jurisdictional theory, under either the "tortious act within Florida" provision of Florida's long-arm statute, § 48.193(1) (a) (2), which provides that a nonresident defendant is subject to personal jurisdiction in Florida "for any cause of action arising from ... [c]ommitting a tortious act within

[Florida]," *or,* under the "doing business in Florida" provision, § 48.193 (1) (a) (1), which provides that a nonresident defendant is subject to personal jurisdiction in Florida "for any cause of action arising from … operating, conducting, engaging in, or carrying on a business or business venture in this state…."

Under Florida law, a non-resident commits a tortious act "within Florida" when he commits an act outside the state that causes injury within the state. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339 (11th Cir. 2013), *citing Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008). For purposes of this statute, a defendant does not have to be physically present in Florida for the tortious act to occur "within" the state. *Internet Solutions Corp. v. Marshall*, 557 F.3d 1293 (11th Cir. 2009), citing *Wendt v. Horowitz*, 822 So.2d 1252, 1260 (Fla. 2002). Thus, "committing a tortious act" within the meaning of this provision may be accomplished via "telephonic, electronic, or written communications into Florida," so long as the cause of action arose from those communications, and, under certain circumstances, such communications can also satisfy due process requirements. *See also Swanky Apps, LLC v. Roony Invest & Finance, S.A.,* 126 So.3d 336 (Fla. 3d DCA 2013); *OSI Industries, Inc. v. Carter*, 834 So.2d 362 (Fla. 5th DCA 2003).

As applied to this case, Global maintains that the multiple phone calls and emails directed by Murphy into the State of Florida during the course of her negotiations with Global representatives involving certain bridge loans and a Merger Agreement between Airtronic and Global are sufficient to confer personal jurisdiction over Murphy individually on theory that she engaged in these negotiations with a fraudulent intent to further her own personal economic interests during the pendency of bankruptcy proceedings involving Airtronic in the State of Illinois, and without any legitimate intent to ever consummate the Merger Agreement between Global and Airtronic.

However, under the Florida long-arm statute, a distinct connection between the defendant's communication and the alleged tort is required to sustain specific jurisdiction. Under Florida law, this would require that the communications directed into the state themselves be alleged to be tortious (e.g. defamatory or libelous), *see e.g. Achievers Unlimited, Inc., v. Nutri Herb, Inc.*, 710 So.2d 716, 618 (Fla. 4th DCA 1988), or fraudulent. *See e.g. Deloitte & Touche v. Gencor Industries, Inc.*, 929 So.2d 678 (Fla. 5th DCA 2006). Conversely, where none of the alleged causes of action would depend on proof of either the existence or content of the communications from the non-resident into Florida, personal jurisdiction will not lie. *Mellennium Industries Network, Inc. v. Hitti*, 2014 WL 324656 (S.D. Fla. 2014). This follows because § 48.193 (1) (a) (2) requires a sufficient nexus between the cause of action and the non-resident defendant's in-state contacts. *Wendt v. Horowitz,* 822 So.2d 1252, 1260 (Fla. 2002).

In the current posture of this case, however, there is insufficient evidence for the court to determine whether the torts alleged against Murphy are related to and arise out of any communication(s) which were either directed by Murphy, from outside the state, into the State of Florida, or which were made by Murphy during any of her personal visits with Global representatives in Florida. Global alleges in its complaint that Murphy never intended to consummate the Merger Agreement with Global, but instead acted with a fraudulent intent to simply string Global along as a potential business partner in order to secure a solid funding source for her personal salary and other benefits while searching all the while for a more lucrative business partner for Airtronic. However, Global does not identify the critical point(s) in time at which Murphy acted with this alleged fraudulent intent, nor does it identify when she actively entered into negotiations with or consummated a merger agreement with the alleged competitor entities, identified in the complaint

as Kearney Park Investments LLC and Onset Capital Partners.

Further, Global does not explain how any particular email or telephone communication directed into the state, or personal statement of Murphy made during a visit in the state, directly gave rise to or played any role in Murphy's alleged fraudulent scheme to use Global as a temporary lending source or her alleged tortious interference with the Global/Airtronic Merger Agreement. *See e.g. Consolidated Energy Inc. v. Strumor*, 920 So.2d 829 (Fla. 4th DCA 2006) (telephone communications between non-resident agent and instate corporate representative in connection with company pledge of stock to secure a loan did not provide basis for exercise of personal jurisdiction over agent, where communications did not give rise to company's causes of action). Thus, at this juncture there is therefore insufficient evidence from which to make a determination on the applicability of the "tortious act within Florida" provision fo the Florida long-arm statute.

As to Global's alternative contention that jurisdiction may be sustained against Murphy for "doing business" in the State of Florida, based on her active solicitation of nearly $1.5 million dollars from a Florida-based company as a purported means of sustaining the Airtronic corporation during the pendency of bankruptcy proceedings against it in the State of Illinois --– an act ostensibly performed for benefit of Airtronic — Murphy invokes the corporate shield doctrine as basis for resisting the exercise of personal jurisdiction. Under the corporate shield doctrine, the acts of a corporate employee performed in his corporate capacity cannot form the basis for jurisdiction over the corporate employee in his individual capacity. *Schwartzberg v. Knobloch,* 98 So.3d 173 (Fla. 2d DCA 2012); *Doe v. Thompson*, 620 So.2d 1004, 1006 (Fla. 1993) ("it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer").

4

However, there is an exception to the corporate shield doctrine which limits the scope of the doctrine's protection: a corporate officer who directs fraud or other intentional misconduct committed outside the state toward parties inside the state may be subject to personal jurisdiction. *Kitroser v Hurt*, 85 So.3d 1084 (Fla. 2012). In other words, the corporate shield doctrine is inapplicable where a corporate officer commits intentional torts aimed at the forum state. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339 (Fla. 2013); *United Credit Recovery LLC v Bexten,* 2012 WL 750299 (M.D. Fla. 2012).

In this case, Global alleges that Murphy solicited a total of $1.5 million dollars in bridge loans from a Florida-based company with a fraudulent intent to secure operational funding for Airtronic during bankruptcy reorganization proceedings, while surreptitiously seeking out an alternative and more lucrative business partner for Airtronic. That is, it alleges intentional fraud-based torts arising from a series of bridge loans made by a Florida resident to a non-resident corporation at the behest of its President and CEO, from which all causes of action asserted in the complaint arise. Further, Global suggests that Murphy acted for the ostensible purpose of sustaining Airtronics during the pendency of bankruptcy reorganization proceedings in Illinois, but effectively for the personal benefit of Murphy, and specifically, for the purpose of securing her personal salary requirements while she searched for an alternative and more lucrative business partner for Airtronic.

Because the corporate shield doctrine does not apply to intentional torts calculated to cause injury in Florida, or to shield a non-resident corporate officer from fraudulent activity directed at parties in Florida, the application of the doctrine here as an impediment to the exercise of personal jurisdiction over Murphy is dubious. *See Doe v Thompson*, 620 So.2d 1004, 1006 n. 1 (Fla. 1993) ("A corporate officer committing fraud or other intentional misconduct can be subject to personal

5

jurisdiction); *McKenzie v Reuter*, 9 So.3d 770 (Fla. 4th DCA 2009); *Bryon v. Marine Carriers (USA), Inc.*, 668 So.2d 273, 274 (Fla. 1st DCA 1996); *Allerton v. State of Florida Dept. of Insurance,* 635 So.2d 36 (Fla. 1st DCA), *rev. den.*, 639 So.2d 975 (Fla. 1994). However, there is insufficient evidence for the court to make a studied determination on the application of this recognized exception to the corporate shield rule on the current record.

The court shall therefore reserve ruling on this issue pending completion of jurisdictional discovery. At the conclusion of jurisdictional discovery, Global shall be required to file an amended complaint which sets forth its personal jurisdictional theories and supporting factual allegations with specificity. Further, the amended complaint shall comply with the specific pleading requirements for fraud imposed by Rule 9(b), providing the necessary detail and descriptions of the specific time, place, content, and addressee of all allegedly false communications generated by Murphy in the course of her dealings with Global and which form the factual predicate of each of the alleged tort claims asserted against her in this action. In particular, Global shall set forth specific allegations regarding Kett's motive and intent at specific, material points during the course of her negotiations and merger discussions with Global, and shall otherwise set forth sufficient facts to establish the requisite "connexity" requirement between business transacted in Florida by Murphy and the torts alleged against her in the complaint.

## Conclusion

Recognizing that jurisdictional discovery is favored in order to promote the meaningful resolution of challenges to personal jurisdiction. *Majd-Pour vs. Georgiana Community Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir. 1984) ("[a]lthough the plaintiff bears the burden of proving the court's jurisdiction, the plaintiff should be given the opportunity to discover facts that would support his

allegations of jurisdiction"); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353 (11th Cir. 1997); *Eaton v. Dorchester Development Inc.*, 692 F.2d 727 (11th Cir. 1982), it is

**ORDERED AND ADJUDGED**:

1. The plaintiff's motion to compel jurisdictional discovery [ECF No. 14] is **GRANTED.** Plaintiff may conduct discovery that is tailored to the personal jurisdiction issues implicated by the defendant's motion to dismiss. Plaintiff shall have a period of **FORTY-FIVE (45)** from the date of entry of this order within which to conduct and conclude this jurisdictional discovery. The parties are further directed to confer and cooperate in good faith in determining the logistics of any depositions, including the date, time, location and mode (telephone, video, etc).

2. The plaintiff shall file an amended complaint which comports with the prescriptions of this order by no later than **JUNE 18, 2014.**

3. In light of this ruling, the defendant's motion to dismiss the original complaint for lack of personal jurisdiction [ECF No. 6] is **DENIED WITHOUT PREJUDICE** to be renewed at the conclusion of jurisdictional discovery. If the defendant renews her motion, the parties may file supplemental briefs concerning personal jurisdiction issues by no later than **JUNE 30, 2014.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 21st day of April, 2014.

_____
Daniel T. K. Hurley
United States District Judge

c. All counsel